UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JEFFREY CULBREATH,

                           Plaintiff,

        - Against -

THOMAS GRIFFIN, et al,

                         Defendants.
------------------------------------------------------------X

17 Civ. 3406 (KMK)(LMS)

**DECLARATION OF
CARL J. PIERCE**

CARL J. PIERCE, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct:

1. I am a Lieutenant with the New York State Department of Corrections and Community Supervision ("DOCCS"). I provide this declaration in support of Defendants' objection to Plaintiff's request for information pertaining to the identification of the chemical agent deployed at Green Haven Correctional Facility ("Green Haven") on August 3, 2015 and DOCCS' policies and procedures involving the use of chemical agents.

2. This declaration is based upon my personal knowledge and my review of documents pertinent to this case.

3. I have worked for DOCCS for over 32 years. During this time, I have served as a correction officer at Green Haven and Coxsackie Correctional Facility. I have also held the rank of Sergeant and worked at Fishkill Correctional Facility, Great Meadow Correctional Facility, Greene Correctional Facility and Coxsackie Correctional Facility. I previously held the positions of Warrant Extradition, Recruit and Radio Communications Sergeant, and presently hold the position of Training Academy Administration Lieutenant and am the team leader for the

Correctional Emergency Response Team ("CERT") unit, which is stationed at the Academy.

4. I am certified by the Municipal Police Training Council ("MPTC") as an instructor in Chemical Agents, Firearms, Unarmed Self Defense, Counter Terrorism and Baton. For approximately 18 years, I have instructed such at the Academy. I also conduct in-service training as well to the Department's field CERT teams.

5. As the Administration/CERT Lieutenant, I have direct oversight to ensure that all mandated training is received and properly recorded.

6. As part of my duties, I monitor In-Service training in conjunction with the In-Service Training Sergeant. Additionally, I oversee the daily operations of the Academy chemical agent and firearms ranges, and along with the Academy Captain, I oversee the operational readiness of the 21 CERT teams which includes training records, equipment inventory and supplies. Moreover, I provide direct oversight or participation in special projects or details related to CERT.

### Identification of the Chemical Agent Used on August 3, 2015 Jeopardizes Institutional Safety and Security

7. It is my understanding that the Plaintiff Jeffrey Culbreath, a DOCCS' inmate bearing Departmental Identification Number ("DIN") 95-B-1028, claims in this lawsuit that his Eighth Amendment rights were violated on August 3, 2015, when chemical agents were released into the West Mess Hall at Green Haven in response to a physical altercation involving multiple inmates.

8. I also understand that Plaintiff has requested that the Defendants provide documentation concerning "the identification," "actual name," "manufacturer," and the "full

2

listing of ingredients" of the chemical agent deployed in the mess hall at Green Haven on August 3, 2015. See Plaintiff's Request for Documents, Photos, and Videos, Request Nos. 2-5.

9. Chemical agents have been used by law enforcement, the US Postal Service and others for decades as an effective security tool. Chemical agents are utilized as a law enforcement tool because they have been determined to be non-lethal, quick acting, and have a short-term effect on the subject.

10. Disclosure of the information sought in Plaintiff's request Nos. 2-5 about the chemical agent released on August 3, 2015, would pose a serious threat to the safety and security of both staff and inmates. An incarcerated inmate has many ways to access information. Family, friends, and co-conspirators are often times more than willing to research ways to secrete contraband into a correctional facility.

11. If an inmate was to have knowledge of the chemical agents used by DOCCS, they would then be able to get information on the effects the agent has and educate themselves and other inmates on ways to limit these effects, which reduces our ability to maintain the safety and security of the facility.

12. The fact that most inmates cannot identify the brand or type of chemical agent available is a stratagem that law enforcement relies upon for the effective use of the particular chemical agent. Chemical agents are not all classified the same. If an inmate knows that the chemical agent being deployed is an irritant agent, inflammatory agent, and lacrimation agent, he could then research and look for ways to limit or reduce its desired effect.

13. If the deployment of chemical agents is warranted to address a major disturbance or gain control in an emergency situation, such as the incident in this lawsuit, and the inmates have

the ability to counter the effects of the chemical agent, it would place all persons involved at risk of serious injury and compromise the safety and security of the facility. This is why we must safeguard information regarding the type or kind of chemical agent used.

### Disclosure of DOCCS' Policies and Procedures Regarding the Use of Chemical Agents Also Jeopardizes Institutional Safety and Security

14. Plaintiff's Request No. 6 for "[a] copy of the NYSDOCCS Training Protocol as to the when and when not relative to chemical agent deployment" should also be denied. Knowledge of the guidelines of a particular chemical agent undercuts the usefulness of that chemical agent to DOCCS' security goals. The training manual requested contains information regarding the methods and techniques used by security staff at DOCCS.

15. We do not want inmates to have specific information to allow them to circumvent the procedures DOCCS uses to respond to disturbances. The disclosure of DOCCS' training materials to an inmate poses a direct threat to the safety of other inmates, as well as the uniformed and civilian staff.

16. An inmate having particularized knowledge of DOCCS' techniques will be better able to thwart and frustrate facility staff in their ongoing attempts to maintain and restore order in DOCCS' facilities. Further, we do not want inmates to know some of the sensitive information mentioned in our Manual because they can provide it to other inmates and their family members, who may share it through the internet. Public dissemination of DOCCS' policy and procedures could prove detrimental to the good and orderly functioning of its facilities.

17. The Court should also deny Plaintiff's request for "[a] copy of all the documentation identifying the time span between an inmate's severe chemical agent exposure and

4

an inmate's access to the appropriate decontamination procedures." See Request No. 8. Denial is necessary for the same reasons as stated above. Provision of this information would compromise institutional safety and security. An inmate could use this information to discover the type of chemical agent DOCCS uses and shield themselves from the effects of the chemical agent.

18. Similarly, Plaintiff's Request No. 11 for an unredacted "copy of NYSDOCCS departmental directive #4903" should also be denied because that directive contains sensitive information regarding the "Use of Chemical Agents".

19. DOCCS has a coding system in place whereby each DOCCS directive is assigned a code that indicates whether the directive may be distributed to inmates. Directives marked with code "D" cannot be released to inmates due to concerns for the safety and security of inmates and staff if the directive were released to inmates and staff. Directive 4903 is coded "D".

20. Directive 4903 cannot be released to Plaintiff as the release would pose a threat to the order and security of DOCCS' facilities as well as pose a security risk to staff. An inmate in possession of information regarding the specific policies and procedures regarding DOCCS' use of chemical agents can develop ways to circumvent these policies and regulations. Inmates have been known to utilize family and friends to get around DOCCS security safeguards.

21. The consequences of disclosing safety and security measures involving the use of chemical agents could be disastrous and would seriously undermine DOCCS' compelling interests in maintaining safety and security.

**There are No Videos of DOCCS Staff Training**

22. In Request No. 16, Plaintiff seeks "[a]ccess to watch the staff training video as it relates to use of force via chemical agent deployment." The training provided to DOCCS

5

personnel is practical, hands-on. We do not conduct video training involving chemical agents.

**Conclusion**

23.     Based upon the foregoing, I respectfully request that the Court deny the Plaintiff's request for disclosure of documentation identifying the chemical agent released on August 3, 2015, and DOCCS' policies and procedures involving the use of chemical agents.

Dated: February 13, 2018
       Albany, New York

                                                     CARL J. PIERCE