```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JEFFREY CULBREATH,

          Plaintiff,

     v.                              17 Civ. 3406(KMK)

                                     CONFERENCE

THOMAS GRIFFIN, et al.,

          Defendants.

------------------------------x
                                     United States Courthouse
                                     White Plains, N.Y.
                                     November 30, 2017



Before:   THE HONORABLE LISA MARGARET SMITH,

                                     Magistrate Judge



                         APPEARANCES

JEFFREY CULBREATH
     Plaintiff pro se (via telephone)


ERIC SCHNEIDERMAN
     Attorney General for the State of New York
JULINDA A. DAWKINS
     Assistant Attorney General


*Proceeding recorded via digital recording device.
```

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1          THE DEPUTY CLERK:  In the matter of Jeffrey
2   Culbreath v. Thomas Griffin.
3          Counsel and parties appearing pro se, please note
4   your appearance for the record.
5          MR. CULBREATH:  Jeffrey Culbreath, for the record,
6   plaintiff.
7          MS. DAWKINS:  Julinda Dawkins, New York State
8   Attorney General's Office, for defendants.
9          THE COURT:  Good morning.  This matter has been
10  referred to me by Judge Karas for general pretrial supervision.
11         Ms. Dawkins, I was just looking at the docket sheet,
12  and I'm a little confused about why this matter was not
13  designated for standard discovery under local Civil Rule 33.2.
14         MS. DAWKINS:  Your Honor, I did disclose and I did
15  provide responses to 33.2.
16         THE COURT:  You did?
17         MS. DAWKINS:  Yes.
18         THE COURT:  All right.  Good.  Good.  Excellent.  The
19  Clerk's Office, frankly, should have stamped it and designated
20  it as a local Rule 33.2 case.  So I appreciate your being on
21  top of that.
22         Mr. Culbreath, do you understand what that means?
23         MR. CULBREATH:  Yes.  I reviewed the civil -- the
24  court civil rule on that, 33.2.
25         THE COURT:  Good.

          MR. CULBREATH:  As noted, she did receive -- she did send me some materials.

          THE COURT:  Good.

          I do need to spend a few minutes, Mr. Culbreath, talking to you about the relevance of certain information about these officers.  In particular, you have alleged that Officer -- is it Nagy?

          MR. CULBREATH:  Yes.  Nagy.

          THE COURT:  Nagy?

          MR. CULBREATH:  Yes.

          THE COURT:  That he has a history of using excessive force or otherwise behaving improperly toward inmates, and whether someone uses excessive -- does something wrong on one occasion does not mean they did something wrong on another occasion.

          So, for example, if I were charged with committing a robbery and I had previously been convicted of committing a robbery, the information about the previous robbery could not be offered against me as evidence at trial unless there was something very specific about it.  So if I committed a robbery while I was dressed like Bozo the Clown and I had previously been convicted of committing a robbery while I was dressed like Bozo the Clown, that might be relevant to show that it was the same person who committed both robberies.  But just the fact that Mr. Nagy may have been charged with or accused of or even

1  found in violation of certain rights of the inmates is not
2  necessarily relevant in your case.
3           The claims you have brought are all under the federal
4  statute.  You haven't brought any state law claims.  And so the
5  negligent supervision claim is somewhat questionable under
6  federal law.
7           MR. CULBREATH:  Let me know how -- this is the first
8  time I ever engage in a proceeding like this, so let me know
9  when I can respond.  I do have a response to some of the things
10 you said, but I just need to know when I can respond, your
11 Honor.
12          THE COURT:  Well, what I want to say to you is that,
13 in some circumstances, I would direct Ms. Dawkins to submit the
14 personnel files of these officers to me for in-camera review to
15 determine whether there's any information in those records that
16 you would be entitled to during discovery, but I'm not sure
17 that there's any relevance to those things.
18          MR. CULBREATH:  I can explain the relevance if you
19 would like me to.
20          THE COURT:  Well, if, for example, you had also
21 brought your claim against the State of New York, then there is
22 something called Monell liability under a case called Monell
23 against Department of Social Services.  That's M-O-N-E-L-L.
24          MR. CULBREATH:  Okay.
25          THE COURT:  In which the State might be responsible

```
 1   if, for example, they had knowledge that an officer had a
 2   propensity to behave improperly.  If there had been substantial
 3   discipline before that, then it could be relevant under those
 4   circumstances.  But you did not bring your claim against the
 5   State of New York.
 6             MR. CULBREATH:  No.  It's against the individuals.
 7             THE COURT:  And so that argument doesn't really
 8   apply.  But go ahead and say what you want to say.
 9             MR. CULBREATH:  Okay.
10             The reason why I need Nagy's personnel file in terms
11   of information purposes is for impeachment purposes.  In that
12   file we have work rule violations; fraudulent claims, core
13   performance evaluations, and even potential mental health
14   issues that's within the means -- it could be used to impeach
15   his credibility in case he get on the stand and also is
16   information that was available to the Superintendent, and he,
17   with that information, allowed him to be in a sensitive area
18   that he was in dealing with the ammunition.  With the
19   ammunition.  It shows that, despite knowing these things, he's
20   still allowed to be in a sensitive area, such as the
21   chemical-gas booth, which is why he did what he did, which was
22   lodge those chemicals maliciously.  It wasn't a negligence act.
23   That was a malicious act.  And the information showing -- from
24   his personnel file show a history of things of that nature.
25   And like I said, it would impeach his credibility in case he --
```

1   the fraudulent claims aspect is, you know, basically deceit.
2   When the person going to be deceitful, they going to deny
3   things, but he has a history of doing that, so that reveals
4   that.  That's why I -- that's the relevant information.
5           THE COURT:  Well, simply because someone has denied
6   accusations that were made against them, that's not a basis for
7   impeachment.  And the fact that he may have previously been
8   found to have violated procedures, that's not necessarily a
9   basis for impeachment.
10          Impeachment doesn't mean showing that somebody's a
11  bad person.  Impeachment is to establish that someone lacks
12  credibility.
13          MR. CULBREATH:  True.
14          THE COURT:  And that's different.  Those two things
15  are very different, sir.  And so some of the things that you're
16  talking about you would not be entitled to in any event.
17          I have a significant hesitation in allowing discovery
18  into what Mr. -- was Mr. Griffin the warden?
19          MR. CULBREATH:  Mr. Griffin is the Superintendent,
20  yes.
21          THE COURT:  The Superintendent?
22          MR. CULBREATH:  Yes.
23          THE COURT:  I'm not sure that supervisory
24  responsibility, even on the basis of negligence, is lawfully
25  appropriate.

1                So here's what I'm going to do, Mr. Culbreath.  I'm
2   going to have Ms. Dawkins send me these three personnel files,
3   including any and all disciplinary or investigative files.  So
4   if there is an internal investigations procedure for employees
5   or if there is a state-run investigation or discipline process,
6   I want to see all of those things.
7                MR. CULBREATH:  Right.
8                THE COURT:  And at the same time that you send me
9   those, Ms. Dawkins, I think I would like you to send me a
10  letter brief -- let's make it limited to five pages double
11  spaced -- on the issue of Mr. Griffin's potential supervisory
12  liability and discovery of the other officers' personnel
13  records for the purpose of establishing Mr. Griffin's
14  knowledge.
15               You follow what I'm saying?
16               MR. CULBREATH:  Can I say something, your Honor,
17  please?
18               THE COURT:  Wait just a second.  I need to find out
19  if Ms. Dawkins understood what I said.
20               MR. CULBREATH:  Okay.
21               MS. DAWKINS:  I'm not sure what exactly it is that
22  you're looking for, your Honor, with regard to --
23               THE COURT:  Well, typically supervisory liability
24  would not exist under Section 1983 for Mr. Griffin simply
25  because he was the supervisor of officers, even if they were

1  found to have violated Section 1983 by excessive force or
2  whatever.  But we don't usually see the kind of specific
3  allegations that Mr. Culbreath has put forth here, so I have a
4  significant question about what the standard would be for
5  supervisory liability in light of the claims and allegations in
6  this complaint.
7          Now, at this point, I'm only focusing on discovery.
8  This isn't a motion to dismiss.  It's not a motion for summary
9  judgment.  I'm just focusing on the question of discovery.  And
10  I want you to help educate me to make sure that I understand
11  the parameters that might apply to supervisory liability in
12  light of the allegations here.
13          MS. DAWKINS:  So this would not be like a motion.
14          THE COURT:  No, it's not a motion.
15          MS. DAWKINS:  Like a personal involvement.
16          THE COURT:  I'm just asking you to give me your
17  position along with any case citations.  Don't quote from the
18  cases, just cite to them.
19          And just a reminder.  Please make sure to make copies
20  of any cases that you cite and include those in the copy that
21  you send to Mr. Culbreath --
22          MS. DAWKINS:  Okay.
23          THE COURT:  -- so that he has access to them without
24  having to go to the law library.
25          So do you follow what I'm saying?  I'm looking for

1   your position on whether the information, for example, in
2   Officer Nagy's personnel file about any history he may have of
3   discipline would be relevant to any claim of supervisory
4   liability, whether it is negligent or even intentional, on the
5   part of Mr. Griffin.
6           MS. DAWKINS:  With regard to our responses to the
7   33.2, in there, we did disclose that there were no disciplinary
8   against Officer Nagy or any of the other defendants.
9           THE COURT:  Well, I still want to see their personnel
10  files --
11          MS. DAWKINS:  Okay.
12          THE COURT:  -- because there are undoubtedly
13  complaints, even if no discipline actually took place.
14          MS. DAWKINS:  And then you requested other
15  investigatory files.
16          THE COURT:  If any investigations have been conducted
17  as to any of these three officers, I want to see it.
18          MS. DAWKINS:  And that would include -- I'm trying to
19  get an understanding.  Would that be grievances?
20          THE COURT:  Everything.  Everything to come to me for
21  in-camera review.  You can have it delivered here.  You can
22  mail it or you can have it hand delivered.  If it's hand
23  delivered, they should come right up to the fifth floor and
24  ring my bell.
25          Once those documents come to me, I keep personal

1    control over them.  No one else sees them.  They're not sent
2    off to a file cabinet.  They are in my chambers under my
3    personal control.
4             I do require original documents, and the reason for
5    that is that the kinds of documents we are talking about
6    sometimes include little bitty pieces of paper or things that
7    have information on two sides and, inevitably, I only get the
8    first side and the third side.  I don't get the second side
9    because, whoever photocopies it, doesn't do a good job.  If
10   there's a little piece of paper or a Post-it note, I won't get
11   that document.  I won't get whatever was underneath that
12   Post-it note.  Or there could be a legal-size document where
13   I'll get the letter-size version.  I need the originals.
14            MS. DAWKINS:  Your Honor, we would object to turning
15   over --
16            THE COURT:  Okay.
17            MS. DAWKINS:  -- everything basically because that
18   would be very burdensome on the facility.
19            THE COURT:  These are three officers.  Turn it over.
20   I do it all the time.
21            MS. DAWKINS:  Grievances are not maintained by
22   officers.  They are maintained by the individual that --
23   basically, the inmate that filed the complaint.  So to have a
24   search done for everything with regard to --
25            THE COURT:  Whatever investigations.  There's a

1    process for investigating grievances.  If there was an
2    investigation, then I need to see it.
3             MS. DAWKINS:  And again, with regard to any
4    investigation that might have been conducted by ^officer's
5    special investigations, again, I've' been (INAUDIBLE) the
6    belief that that is also maintained by the inmate and not
7    ^against the officers.
8             MR. CULBREATH:  Can I say something?
9             THE COURT:  Yes.
10            MR. CULBREATH:  With respect to the Office of
11   Investigation, I think they refer to it as IG, I never
12   maintained a file on them, or any other inmate have I've ever
13   encountered.  They have their own -- they are part of DOCCS.
14   They have the information in their office.  The only person
15   that technically has access to a IG file is the officer, and
16   the officer is represented by an attorney, which is the
17   Attorney General.  Then the officer gives them authorization to
18   give over their confidential file, because it's basically the
19   person who's being investigated, they can have access to their
20   file, but I can't have access to their file.
21            THE COURT:  I find it extremely hard to believe,
22   Ms. Dawkins, that the Office of Special Investigations would,
23   for example, interview other inmates and then turn it all over
24   to the person who made the grievance.  I find that not only
25   impossible to believe, but ludicrous, because that would mean

1  that the State was saying, whoops, these are our records, but
2  we don't care.  The inmates who have no legal responsibility to
3  maintain them, nor do they have the capacity to maintain them,
4  who knows what will happen to them?  So then the State can say
5  we have no responsibility, it's not our job --
6           MS. DAWKINS:  Your Honor --
7           THE COURT:  -- and it is your job.
8           MS. DAWKINS:  -- that is not the statement that I
9  made.  I think there's a misunderstanding.  What I'm saying is
10 that the way that the files are maintained by the Office of
11 Special Investigations, I believe that it might be under the
12 name of the inmate.  And so to conduct a search for all
13 allegations which would have been made against Officer Nagy
14 would be very burdensome and --
15          THE COURT:  Requires you to have a conversation with
16 Officer Nagy.  How terrible would that be?  He is your client.
17          MS. DAWKINS:  But sometimes he's not aware that he's
18 a subject of an investigation.
19          THE COURT:  Then you do your best.
20          MR. CULBREATH:  He has to respond to each allegation
21 made against him, so, at that point, he's aware.  Every time
22 they write a complaint against him, he's made aware of it, and
23 he has to respond.  They investigate it and they rubber stamp
24 it and resolve it in his favor.  However, they have a file on
25 it, and he's aware of every time he's been under investigation.

1                THE COURT:  I think --

2                MS. DAWKINS:  Your Honor --

3                THE COURT:  I think you'll be able to provide me with
4    what I'm looking for.

5                MS. DAWKINS:  And, also, if we could have a time
6    frame within which --

7                THE COURT:  Sure.

8                MS. DAWKINS:  Are we looking for since he was
9    employed with DOCCS or five years before, ten years before the
10   allegations in this complaint?

11               MR. CULBREATH:  I'll go with -- let me look at my
12   request.  I took that into consideration.  For the IG files,
13   let me see.  IG files.

14               MS. DAWKINS:  Mr. Culbreath, I'm not sure what
15   request you're referring to.

16               MR. CULBREATH:  With respect to the IG file, my
17   second set of plaintiff's requested documents, I request the IG
18   files.

19               THE COURT:  Did you have a time frame that you were
20   looking for, Mr. Culbreath?

21               MR. CULBREATH:  Within that particular -- no.  I left
22   that open.  No.  I left that open-ended.

23               THE COURT:  Okay.  There has to be a time frame.

24               MR. CULBREATH:  How long has he been employed there?

25               THE COURT:  It depends on, of course, how long they

1  have been employed, but if the person's been employed there for
2  40 years, something that happened 35 years ago is simply not
3  relevant to the issues.
4          MR. CULBREATH:  I think three years is appropriate,
5  your Honor.
6          THE COURT:  You said three years?
7          MR. CULBREATH:  Yeah, three years.  I believe three
8  years is appropriate.
9          THE COURT:  Okay.  Three years before the events
10 alleged in the complaint.
11         MR. CULBREATH:  Yes, ma'am.
12         THE COURT:  All right.
13         Ms. Dawkins.
14         MS. DAWKINS:  Again, your Honor, we would just object
15 that that's too long.
16         THE COURT:  It's very reasonable.
17         MR. CULBREATH:  It's reasonable.  And I believe that
18 the standard in the statute state why that requires them to
19 hold the documents I believe for four years, but I've only
20 asked them for three.  I have reduced a year under.
21         THE COURT:  Well, just so you know, Mr. Culbreath,
22 that the discovery would not be bound by whatever any state
23 statute might apply.
24         MR. CULBREATH:  No, not -- I'm thinking of the state
25 statute or regulation that requires this agency to maintain

 1  that record for a four-year period.  So --

 2          THE COURT:  I'm directing that those documents be

 3  produced to me so that I can conduct an in-camera review.  And

 4  as I've already said, I am concerned about the propriety of

 5  information about any prior events being produced insofar as it

 6  relates to the supervisory liability of the Superintendent.  So

 7  Ms. Dawkins is going to provide me a letter, and I'm going to

 8  give you an opportunity to respond, Mr. Culbreath.

 9          So typically I would give you 30 days or less to send

10  me the documents, but since we're just moving into the

11  holidays, I'll give you 45 days to have those personnel records

12  and investigative and disciplinary files submitted to me.  So

13  let's make it January 15 for producing the records and your

14  letter.  Your letter, but, of course, not the records, should

15  also go to Mr. Culbreath.

16          Mr. Culbreath, I'll give you how about until February

17  7th to respond.

18          MR. CULBREATH:  Okay.  That would be great.  The week

19  before Valentine's.  Perfect.

20          Now, the issue is with the supervisory liability.

21          THE COURT:  Yes.

22          MR. CULBREATH:  Then with the Superintendent, right?

23          THE COURT:  Yes.

24          MR. CULBREATH:  Okay.  I understand that.  And, also,

25  you want Ms. Dawkins to address the appropriateness of my

Case 7:17-cv-03406-KMK-LMS   Document 34   Filed 02/22/18   Page 16 of 18    16
2017buculbcf

1    request for the personnel files.

2            THE COURT:  Yes.

3            MR. CULBREATH:  And you also are going to review the

4    files to see if a piece of material is in there as well as

5    anything that affects the veracity of any witness to -- for

6    Nagy if he decide to take the stand.

7            THE COURT:  I'll issue an appropriate order

8    identifying what needs to be produced to you.  There may be

9    certain things that I will direct you to have an opportunity to

10   review which you may not be able to retain them.  I'll just

11   have to wait until I see what documents are produced.

12           I had said January 15th, Ms. Dawkins, for production

13   of the files.  My staff reminds me that's Martin Luther King

14   Day.  The Court will be closed.  So we'll make it January 16

15   for production of the files and for your letter brief and

16   February 7 for Mr. Culbreath to respond.

17           MR. CULBREATH:  Okay.

18           THE COURT:  And what I would like to do, then, is

19   let's reconvene.  How's Thursday, March 1st at 10:30?

20           MR. CULBREATH:  March 1st, 10:30.  March 1st.  I

21   believe that will be a good time for me.  I will keep the Court

22   informed if my circumstance change.

23           THE COURT:  Yes.  If you are moved to another

24   facility, be sure to let us know.

25           MR. CULBREATH:  Okay.  If I get moved -- I might get

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1   released from incarceration because I have an intended matter
2   being investigated on an actual innocence claim, and that's
3   also a lot of litigation going on.  And I just wanted to make
4   the Court and Ms. Dawkins aware that I got a limited amount of
5   time in terms of -- or limited capability because I'm, under
6   these circumstances, trying to do a lot of litigation, the
7   civil matter as well as the criminal matter.
8           But March 1st would be great unless they take me down
9   to court for another unrelated matter.
10          THE COURT:  All right.
11          Ms. Dawkins, does that work for you?
12          MS. DAWKINS:  Yes, your Honor.
13          THE COURT:  Very good.  All right.
14          I think that we are going to end up -- because of
15  this issue with supervisory responsibilities, we may end up
16  going a little beyond the March 31st date that Judge Karas had
17  put into place for completing fact discovery.  I will not
18  expect you to have completed Mr. Culbreath's deposition by the
19  time we come back on March 1st.  Make a note for yourself so
20  that we can make sure, if we need to, to adjust some of these
21  deadlines, depending on what the results are of my in-camera
22  review.  All right?
23          MS. DAWKINS:  Okay, your Honor.
24          MR. CULBREATH:  Yes, ma'am.
25          THE COURT:  All right.  Very good.  Thank you very

1   much. We are adjourned.
2           MR. CULBREATH: Okay. Thank you.
3           MS. DAWKINS: Thank you, your Honor.
4           THE COURT: Thank you.
5           MR. CULBREATH: Bye.
6                       - - - -
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103