UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY CULBREATH, **Plaintiff**, - against - THOMAS GRIFFIN, et al., **Defendants.** | 17 CV 3406 (KMK) (LMS) <u>**DECISION & ORDER**</u> |

**THE HONORABLE LISA MARGARET SMITH, U.S.M.J.**[1]

Plaintiff, who is proceeding pro se, brings this 42 U.S.C. § 1983 ("§ 1983") action against Defendants Thomas Griffin, Michael Nagy, and Mark Tokarz, alleging supervisory liability, as well as excessive force and deliberate indifference to serious medical needs under the Eighth Amendment of the United States Constitution. In the instant motions, ECF Nos. 24-25 and 28, Plaintiff seeks (i) an order compelling Defendants to comply with certain requests for production of documents, and (ii) an order deeming particular requests for admissions ("RFAs") served by Plaintiff admitted. Defendants have opposed these motions. For the reasons set forth below, the Court DENIES IN PART Plaintiff's motions to compel document production, ECF Nos. 24-25, and DENIES Plaintiff's motion seeking an order deeming various RFAs admitted, ECF No. 28.

---

[1] On November 1, 2017, the Honorable Kenneth M. Karas referred this matter to the undersigned for general pre-trial supervision, including the resolution of non-dispositive pre-trial motions. ECF No. 19.

# BACKGROUND

## A. **Factual Background**

Plaintiff was an inmate at Green Haven Correctional Facility ("Green Haven" or the "Facility") during all times relevant to the allegations in the Complaint. ECF No. 2, Complaint ("Compl."), at 3-3c.[2] He alleges that, on August 3, 2015, a fight broke out between two inmates within the Facility's West Mess Hall (the "Cafeteria"). Id. at 3a. After corrections officers ("C.Os.") had broken up the fight and the brawling inmates had been handcuffed, Defendant Nagy "maliciously released canisters of chemical agents" into the Cafeteria. Id. Plaintiff claims that the exposure to the chemicals caused him to experience extreme levels of pain in his face, eyes, head, neck, and arms, and to cough uncontrollably. Id. "Suddenly", Plaintiff claims, Defendant Nagy "released an additional array of chemical agent canisters upon [the Cafeteria]." Id. C.Os. then directed Plaintiff and the other inmates to exit the Cafeteria and to make their way towards the C and D Yard (the "Yard"). Id. at 3a-3b. According to Plaintiff, a "stampede" developed as he and the other inmates exited the Cafeteria. Id. at 3a. Plaintiff collapsed, and, while on the floor, he was overrun by inmates and officers, who allegedly stomped on his back, legs, hands, head, chest, and stomach. Id. at 3b.

Plaintiff alleges that, once he and the other inmates entered the Yard, he was directed to place his hands on a wall in the corridor of the D-Block Housing Unit. Id. at 3b. Defendant Tokarz then allegedly ordered the C.Os. to "take down" any inmate who removed his hands from the wall. Id. Plaintiff avers that he kept his hands on the wall for approximately one hour as he experienced excruciating pain in his lungs, arms, shoulders, face, eyes, and nose. Id. Plaintiff was then directed to remove his clothing, and forced to walk barefoot in his underwear to a

---

[2] Plaintiff is currently incarcerated at Auburn Correctional Facility. ECF No. 10.

shower, where he was permitted to wash his face and arms. Id. He was then ordered to "line up in the dirt until he was escorted to his housing unit." Id. Plaintiff claims that he suffered various physical and psychological injuries as a result of these events. Id. at 4.[3]

### B. **Procedural Background**

Plaintiff filed the instant lawsuit on May 5, 2017, alleging claims of excessive force against Defendant Nagy, deliberate indifference to serious medical needs against Defendant Tokarz, and supervisory liability against Defendant Griffin, all under § 1983. Id. at 3c. Defendants answered the Complaint on September 19, 2017. ECF No. 16. On November 1, 2017, the Honorable Kenneth M. Karas referred this matter to the undersigned for general pre-trial supervision. ECF No. 19. I issued a Discovery Order on November 2, 2017, ECF No. 21, and the parties appeared before the undersigned for an initial status conference on November 30, 2017. Minute Entry, 11/30/2017.

At the initial status conference, I discussed with the parties my concern as to whether Plaintiff's claim of supervisory liability against Defendant Griffin under § 1983 would entitle Plaintiff to discovery related to other officers' personnel records. ECF No. 34, at 6-8. As such, I requested Defendants to submit a letter brief as to their position on this issue. Defendants were asked to discuss whether information pertaining to Defendant Nagy's or Tokarz's personnel files would be relevant to any claim of supervisory liability on the part of Defendant Griffin; and Plaintiff was given the opportunity to submit a responsive letter brief. Id. at 8-9; see also Minute

---

[3] Specifically, Plaintiff alleges that he sustained "painful irritation in both eyes; sharp pain and mucus secretion in both eyes; tearing eyes when exposed to light; headaches; impaired vision; future risk of blindness; nasal and throat irritation; neck pain; permanent bruis[ing] on [the] left elbow and shoulder; difficulty breathing for approx. a week; pain in [the] left elbow and shoulder for approx. a week; permanent damage to lower back causing uncomfortable pain and limited mobility; stress; loss of appetite; anxiety; lack of sleep for nearly 3 days due to discomfort and anxiety." Compl., at 4.

3

Entry, 11/30/2017. During the same conference, I directed defense counsel to submit Defendants' personnel files for in camera review. Minute Entry, 11/30/2017.

Prior to the Court's receipt of these submissions, Plaintiff filed three separate letter motions, ECF Nos. 24-25 and 28, which form the basis of the instant dispute. By letter motion dated January 15, 2018, ECF No. 28, Plaintiff objected to the sufficiency of Defendants' responses to certain RFAs. In a letter motion dated January 17, 2018, ECF No. 25, Plaintiff sought to compel Defendants to produce documents responsive to Requests Nos. 2-9, 11, 13, and 15-16 in Plaintiff's first set of document demands. The final letter motion, dated January 18, 2018, ECF No. 24, moved to compel Defendants' production of information responsive to Requests Nos. 1-6 in Plaintiff's second set of document demands.

On February 13, 2018, Defendants submitted a responding brief, addressing the above contentions raised in Plaintiff's three letter motions. ECF No. 31.[4] In their brief, Defendants indicated that a number of the document requests at issue had been resolved by the parties. Specifically, with respect to Plaintiff's first set of document demands, Defendants stated that Plaintiff had agreed to withdraw his objections to Defendants' responses to Requests Nos. 9, 13, and 15. ECF No. 31, at 3. As to Plaintiff's second set of document demands, Defendants represented that Plaintiff had agreed to withdraw his objections to Defendants' responses to Requests Nos. 3-6. Id. Accordingly, the scope of the instant discovery dispute is confined to: Defendants' responses to Requests Nos. 2-8, 11, and 16 in Plaintiff's first set of document demands; and Defendants' responses to Requests Nos. 1 and 2 in Plaintiff's second set of

---

[4] Separate and apart from these motions, on January 26, 2018, Defendants submitted their brief on the issue of discovery related to supervisory liability, ECF No. 26, and, on February 7, 2018, Plaintiff submitted his response, ECF No. 30.

4

document demands; and the adequacy of Defendants' responses to a number of Plaintiff's RFAs. Each issue is addressed below.

## DISCUSSION

### A. Motions to Compel Document Production

The Court will turn first to Plaintiff's motions to compel production of certain documents, ECF Nos. 24-25. Rule 26(b)(1) sets forth the scope of discovery, providing that, unless otherwise limited by court order:

> "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

Fed. R. Civ. P. 26(b)(1). Pursuant to Rule 34(a)(1), a party may serve upon any other party a request to produce relevant documents in the responding party's "possession, custody, or control[.]" Fed. R. Civ. P. 34(a)(1). If the responding party objects to such a request, it bears the burden of stating "with specificity" the grounds for doing so as well as "whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(B)-(C).

In essence, then, a "two-step analytical framework governs a motion to compel discovery." Johnson v. J. Walter Thompson U.S.A., LLC, No. 16-Civ-1805 (JPO) (JCF), 2017 WL 3055098, at *2 (S.D.N.Y. July 18, 2017). The moving party must first show that the information sought is discoverable (i.e. relevant) and, if that showing has been met, the responding party must justify its reasons for curtailing the discovery. Id. (citations omitted); see also In re Namenda Direct Purchaser Antitrust Litig., No. 15-Civ-7488 (CM) (JCF), 2017 WL

2693713, at *3 (S.D.N.Y. June 21, 2017) ("The burden of demonstrating relevance remains on the party seeking discovery, and the party resisting discovery generally has the burden of showing undue burden or expense." (citations omitted)).

Here, the disputed document requests can be divided into two categories. The first set of requests, Nos. 2 through 6, 8, 11, and 16 in Plaintiff's first set of document demands, seek information generally related to the chemical agent that was used at Green Haven on August 3, 2015. The second category of contested requests, No. 7 in Plaintiff's first set of document demands, and Nos. 1 and 2 in Plaintiff's second set of document demands, involve Defendant Nagy's personnel, grievance and Office of Inspector General ("OIG") files. Each category is addressed below.

### 1. Requests Related to Chemical Agent

Request No. 2 in Plaintiff's first set of document demands seeks information identifying "when the deployed chemical agents were loaded in their chambers." ECF No. 25, Exh. A, at 1. The Court rejects Plaintiff's invitation to compel production of this information. Plaintiff has not met his threshold burden of providing an explanation as to how or why information related to when the chemical agents were loaded into their chambers was in any way relevant to his claims or the defenses asserted. See, e.g., Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 557, 561 (S.D.N.Y. 2013) ("The burden of demonstrating relevance is on the party seeking discovery." (citations omitted)). The Complaint alleges three causes of action against three individual Defendants, regarding a specific incident on a particular date and time. The claimed constitutional violation which is of relevance to this request – namely that Defendant Nagy used excessive force in violation of the Eighth Amendment when he released chemical agents into the Cafeteria at Green Haven on August 3, 2015 – in no way depends on when the chemical agents

6

were loaded into their chambers in the first instance. Defendants' objection to Request No. 2 in Plaintiff's first set of document demands is therefore sustained.

Requests Nos. 3-5 in Plaintiff's first set of document demands seek information related to the names, manufacturers, and ingredients of the chemical agents deployed on August 3, 2015. ECF No. 25, Exh. A, at 1. Again, Defendants' objections to producing documents responsive to these requests are sustained, as the information sought bears no relevance to a claim or defense in this case. To the extent that Plaintiff claims that Defendant Nagy's deployment of the chemical agent constituted an exercise of excessive force under the Eighth Amendment, the operative legal question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Cox v. Fischer, 248 F. Supp. 3d 471, 485 (S.D.N.Y. 2017) (quoting Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)). Details regarding the manufacturer, ingredients, and name(s) of the chemical agents involved have no conceivable relevance to this inquiry, and Plaintiff has not demonstrated otherwise.[5] Accordingly, Defendants' objections to Requests Nos. 2-5 in Plaintiff's first set of document demands are sustained.

The next set of disputed documents, Requests Nos. 6, 8, and 11 in Plaintiff's first set of document demands, present a closer question. Request No. 6 seeks a copy of New York State Department of Corrections and Community Supervision ("DOCCS") protocol regarding when to deploy chemical agents in prisons. ECF No. 25, Exh. A, at 2. Request No. 8 asks for copies of

---

[5] During a status conference held on March 1, 2018, Plaintiff clarified that he had requested this information in order to assist a putative expert in evaluating whether exposure to the chemical agents could cause future, or permanent, health risks. As was discussed with the parties, in the event that Plaintiff does retain an expert for motion practice or trial, and the expert is sufficiently qualified in the relevant area, I would then consider a request to allow information related to the contents of the chemical agents to be produced to the expert, pursuant to a confidentiality or protective order.

all "documentation identifying the time span between an inmate's severe exposure and an inmate's access to the decontamination procedures." Id. Request No. 11 calls for Defendants to produce an unredacted copy of DOCCS directive No. 4903, which contains information regarding the "Use of Chemical Agents." Id.; ECF No. 32, at ¶ 18.

As discussed above, Plaintiff must demonstrate that the information sought by these requests is relevant to the claims or defenses in this case. Fed. R. Civ. P. 26(b)(1). "Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at trial." Vaigasi v. Solow Management Corp., No. 11-Civ-5088 (RMB) (HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016). Indeed, "[a]lthough not unlimited, relevance, for the purpose of discovery, is an extremely broad concept." Greater N.Y. Taxi Assoc. v. City of New York, No. 15-Civ-3089 (VSB) (JCF), 2017 WL 4012051, at *2 (S.D.N.Y. Sept. 11, 2017) (quoting American Federation of Musicians of the United States and Canada v. Sony Music Entm't, No. 15-Civ-5249, 2016 WL 2609307, at *3 (S.D.N.Y. Apr. 29, 2016) (quotation omitted)); see also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (noting that, for purpose of discovery, relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." (citation omitted)). Relevance "is to be determined in light of the claims and defenses asserted by the parties." In re Bairnco Corp. Sec. Litig., 148 F.R.D. 91, 96 (S.D.N.Y. 1993).

Here, the information sought in Requests Nos. 6 and 11 is relevant to Plaintiff's Eighth Amendment excessive force claim against Defendant Nagy. To state such a claim, "a prisoner must allege two elements, one subjective and one objective." Harris v. Miller, 818 F. 3d 49, 63 (2d Cir. 2016) (internal quotation marks and citation omitted). The subjective inquiry focuses on whether, in light of the circumstances, the defendant's actions can be characterized by

8

wantonness. Id. (quoting Wright v. Goord, 554 F. 3d 255, 268 (2d Cir. 2009)). Wantonness may be shown when the force was used "maliciously and sadistically to cause harm" rather than in a "good-faith effort to maintain or restore discipline[.]" Scott v. Coughlin, 344 F. 3d 282, 291 (2d Cir. 2003). The objective inquiry asks whether "the deprivation alleged is sufficiently serious, or harmful enough, to reach constitutional dimensions[.]" Romano v. Howarth, 998 F. 2d 101, 105 (2d Cir. 1993) (internal quotation marks omitted). This asks whether the use of force was more than de minimis, id., and whether, in light of the context, it ran afoul of "contemporary standards of decency." Blyden v. Mancusi, 186 F. 3d 252, 263 (2d Cir. 1999) (internal quotation marks and citation omitted).

In the instant case, Requests Nos. 6 and 11 seek information related to the Facility's policies and/or procedures regarding the use of chemical agents. Although, as Defendants accurately state, the failure to follow a DOCCS Directive or prison regulation does not give rise to a federal constitutional claim" in and of itself, Gumora v. City of N.Y., et al., No. 17-Civ-2300 (LGS), 2018 WL 736018, at *7 (S.D.N.Y. Feb. 5, 2018) (citations omitted), that does not make the information contained within such prison policies, procedures, or directives irrelevant for purposes of discovery. Indeed, such information may be probative of the subjective requirement in the Eighth Amendment excessive force analysis. For example, had Defendant Nagy acted well beyond the scope of what the relevant prison protocol permits or suggests regarding when to disperse chemical agents, a reasonable factfinder could use this information to infer, based on other evidence which is elicited at trial or through discovery, that Defendant Nagy acted "maliciously and sadistically to cause harm." Hudson v. McMillan, 503 U.S. 1, 7 (1992). Conversely, Defendants may wish to argue that Defendant Nagy had acted in accordance with the Facility's policies or procedures on the date in question and, thus, had not engaged in conduct

9

"sufficiently serious, or harmful enough, to reach constitutional dimensions." Romano, 998 F. 2d at 105 (internal quotation marks omitted).

Likewise, the Court finds the information sought in Request No. 8 in Plaintiff's first set of document demands discoverable, as it is relevant to his Eighth Amendment deliberate indifference claim against Defendant Tokarz. A claim alleging deliberate indifference to serious medical needs under the Eighth Amendment requires that the plaintiff demonstrate "(1) that he [or she] suffered a sufficiently serious constitutional violation and (2) that [the defendant] acted with deliberate indifference." Rose v. Garritt, No. 16-CV-3624 (KMK), 2018 WL 443752, at *6 (S.D.N.Y. Jan. 16, 2018) (internal quotation marks and citation omitted). With respect to the first element, an "inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his [or her] health." Walker v. Schult, 717 F. 3d 119, 125 (2d Cir. 2013). "The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." Spavone v. N.Y. State Dep't of Corr. Servs., 719 F. 3d 127, 138 (2d Cir. 203).

Here, Plaintiff claims that his injuries, at least in part, stemmed from the amount of time it took – allegedly one hour – before Defendant Tokarz allowed him to begin the decontamination process. Compl., at 3b. Information pertaining to the timeliness of Plaintiff's decontamination, therefore, bears upon the issue of whether Defendant Tokarz's actions posed an unreasonable risk of damage to Plaintiff's health. Such information may also be relevant to establishing whether Defendant Tokarz acted recklessly in denying Plaintiff decontamination for the claimed duration.

In any event, apart from the question of relevance, Defendants have objected to producing the information sought in Requests Nos. 6, 8, and 11 on various grounds. Principally,

10

Defendants contend that (i) the information sought is protected by the law enforcement privilege; and (ii) disclosure of the information requested would jeopardize the institutional safety and security of the Facility. ECF No. 25, Exh. B, at 7-10. As discussed below, the Court is unwilling to withhold discovery on the basis of the record presented without further explanation and an in camera review of the records.

With respect to the first basis for objecting, "the party asserting the law enforcement privilege bears the burden of showing that the privilege applies to the documents in question." In re The City of N.Y., 607 F. 3d 923, 944 (2d Cir. 2010) (citation omitted). That party must demonstrate that the documents at issue "contain information that the ... privilege is intended to protect." Id. Such protected information may include, inter alia, "information pertaining to law enforcement techniques and procedures[.]" Id. The party seeking to establish that the law enforcement privilege applies should "provide a clear and specific evidentiary showing as to the harm that would be caused by the documents' disclosure." City of N.Y. v. FedEx Ground Packaging Sys., Inc., No. 13-Civ-9173 (ER), 2017 WL 4155410, at *4 (S.D.N.Y. Sept. 19, 2017). Accordingly, "mere recitations of the categories of information that the law enforcement privilege is designed to protect" falls short in providing the requisite detail necessary to establish that the privilege applies to a given set of information. Id. (citing Coleman v. Cnty. Of Suffolk, 174 F. Supp. 3d 747, 757 (E.D.N.Y. 2016), aff'd, 685 Fed. Appx. 69 (2d Cir. 2017)).

Here, Defendants have not shown, with the level of specificity required, that the law enforcement privilege applies to the documents sought in Requests Nos. 6 and 11. Defendants' objections to these Requests simply state, in conclusory terms, that the law-enforcement privilege applies, without offering an explanation with any detail as to how disclosure of such information would cause harm to the Facility. Defendants, moreover, have failed to provide the

11

allegedly privileged information to the Court for in camera review accompanied by a privilege log.[6] Without viewing these records, the Court cannot assess, let alone sustain, Defendants' objections on the basis of privilege. Defendants are therefore directed to produce a privilege log, indicating the documents responsive to Requests Nos. 6 and 11 which have been withheld on the basis of the law enforcement privilege. Defendants are to produce the privilege log to Plaintiff and the Court by **March 19, 2018.**

Similarly, Defendants' objections to producing documents responsive to Requests Nos. 6, 8, and 11 on the grounds of institutional safety and security concerns are insufficient to withhold discovery, unless further information is provided along with an in camera submission of these documents. A correctional facility that objects to discovery on the basis that disclosure of certain information would pose a risk to its institutional security or safety must substantiate that claim by, for example, providing "an affidavit from an appropriate official detailing specific facts supporting the alleged security risk." Barnes v. Smith, No. 12-Civ-1916 (PKC) (RLE), 2013 WL 4447897, at *1 (S.D.N.Y. Aug. 19, 2013) (citation omitted); see also King v. Conde, 121 F.R.D.

---

[6] As outlined in the Discovery Order issued in this case on November 2, 2017:

> When a legal privilege is asserted as a basis for refusing to comply with a discovery demand, the party asserting the privilege has 3 business days to attempt an amicable resolution of the dispute. If the dispute is not affirmatively resolved within 3 business days, the party asserting the privilege then has 5 business days to bring the issue to the attention of the court by a letter brief limited to two (2) double spaced pages, accompanied by a privilege log in full compliance with Local Civil Rule 26.2(a)(1) and (2), and an in camera submission of legible copies of any material to which the privilege is asserted. If disclosure of the privilege would result in revelation of privileged information, the party asserting the privilege shall file the log in camera with the court, and serve a redacted log on the adverse party."

ECF No. 21, at 2.

180, 189 (E.D.N.Y. 1988) (noting that the burden is on the correctional facility to show that "specific harms [are] likely to accrue from disclosure of specific materials.").[7] Here, Defendants filed an affidavit from Carl J. Pierce, a Lieutenant ("Lt.") with DOCCS. ECF No. 32. Although the affidavit purports to explain why disclosure of information regarding the Facility's chemical agent deployment procedures would jeopardize institutional safety or security, much of Lt. Pierce's representations are conclusory and lack specific facts supporting the claimed security risks involved. For example, Lt. Pierce states that disclosure of such information to an inmate would place that inmate and others in better positions to "thwart and frustrate facility staff in their ongoing attempts to maintain and restore order in DOCCS' facilities." ECF No. 32, at ¶¶ 14, 16. Along these lines, the Lt. also states that the information responsive to Request No. 8 would compromise institutional security because an "inmate could use this information to discover the type of chemical agent DOCCS uses and shield themselves from the effects of the chemical agent." Id. at ¶ 17. The Lt. does not, however, explain how an inmate could conceivably act upon this information to circumvent security, as is claimed. Of course, the Court is cognizant of the obvious possibility that a fuller explanation of such information could, in and of itself, raise the same security concerns which Defendants desire to avoid by withholding disclosure of this information in the first place. However, when, as here, the disputed

---

[7] This is in keeping with the view that general and conclusory objections to exclude discovery of requested information have historically been disfavored, see, e.g., Carl v. Edwards, No. 16-CV-3863 (ADS) (AKT), 2017 WL 4271443, at *8 (E.D.N.Y. Sept. 25, 2017) (citing cases from the Southern and Eastern Districts of New York), and were recently prohibited under the amendments to the Federal Rules of Civil Procedure, effective December 1, 2015, Fischer v. Forrest, Nos. 14-Civ-1304 (PAE) (AJP), 14-Civ-1307 (PAE) (AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) ("General objections should rarely be used after December 1, 2015 unless each such objection applies to each document request[.]"); see also Fed R. Civ. P. 34(b)(2)(B) ("For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." (emphasis added)).

13

information is relevant to the claims at issue, the decision as to whether or not to allow disclosure belongs to the Court. To reach this determination, however, more information is needed. Accordingly, Defendants are directed to produce to the Court all documents responsive to Requests Nos. 6, 8, and 11 for <u>in camera</u> review, along with supporting information explaining how disclosure of the documents, when limited by a confidentiality order, could be used by an inmate to hamper institutional safety and security. Defendants are to file the responsive documents along with the supporting information, <u>in camera</u>, by **March 19, 2018.**

Lastly, the dispute with respect to Request No. 16 in Plaintiff's first set of document demands is moot. This Request seeks "[a]ccess to watch the staff training video as it relates to use of force via chemical agent deployment." ECF No. 25, at 4; Exhs. A, at 3, and B, at 12. Importantly, though, "a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one 'cannot be required to produce the impossible.'" <u>Menard v. Chrysler Grp. LLC</u>, No. 14-Civ-6325 (VB), 2015 WL 5472724, at *1 (S.D.N.Y. July 2, 2015) (quoting <u>Zervos v. S.S. Sam Houston</u>, 79 F.R.D. 593, 595 (S.D.N.Y. 1978)). Here, Lt. Pierce's affidavit states that staff do not undergo such video training involving chemical agents. ECF No. 32, at 5-6. Thus, there is no document or video responsive to that request. Although the Court notes that Defendants did not represent that no training video existed in their response to Plaintiff's document demand, the Court finds Lt. Pierce's statement, at this juncture, sufficient to resolve the dispute with respect to Request No. 16.

### 2. **Requests Related to Defendant Nagy's Records**

The second category of disputed document requests, Request No. 7 in Plaintiff's first set of demands, and Requests Nos. 1 and 2 in his second set, seek certain files related to Defendant

14

Nagy. Specifically, Request No. 7 asks for a "copy of every grievance filed against" Defendant Nagy by Green Haven inmates, alleging "threats, assault, abuse of authority, and use of excessive force." ECF No. 25, Exh. A, at 2. Requests Nos. 1 and 2 in Plaintiff's second set of document demands pursue a complete copy of Defendant Nagy's personnel file, and the production of all files related to OIG investigations of Defendant Nagy "involving conduct similar, i.e., excessive force against inmates, or/and in which Defendant Nagy made any statements to [O]IG investigators concerning the investigation of another person", respectively. ECF No. 24, Exh. A, at 1. Plaintiff contends that these records are relevant to the extent that they may be used to: (i) establish Defendant Griffin's personal involvement for purposes of supervisory liability; (ii) show Defendant Nagy's intent for the Eighth Amendment excessive force claim; and (iii) to impeach Defendant Nagy's credibility.

On January 31, and again on February 5, 2018, defense counsel submitted responsive documents to the Court for in camera review. In Particular, Defendants provided the Court with the personnel files for all three Defendants from 2012 to 2015; 11 inmate grievances; and three OIG investigative files. These documents are presently in the process of being reviewed; and the Court will issue a separate ruling on whether to permit discovery related to these documents as soon as reasonably possible.

### B. Defendants' RFA Responses

Plaintiff also disputes the adequacy of Defendants' responses to a number of RFAs. ECF No. 28. Under Rule 36(a)(1) of the Federal Rules of Civil Procedure, a party may serve upon any other party a written request to admit the truth of any maters within the scope of Rule 26(b)(1), which pertain to: "(A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). Such inquiries are

designed to "reduce trial time ... [by] facilitat[ing] proof with respect to issues that cannot be eliminated from the case, and ... narrow[ing] the issues by eliminating those that can be." Wiwa v. Royal Dutch Petroleum Co., Nos. 96-Civ-8386 (KMW) (HBP), 01-Civ-1909 (KMW) (HBP), 2009 WL 1457142, at *4 (S.D.N.Y. May 26, 2009) (quoting Fed. R. Civ. P. 36, advisory committee note) (internal quotation marks omitted and alterations in original). When the answering party does not admit to a particular RFA, "the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4).

Where, as here, a disagreement arises as to the sufficiency of an RFA response, the reviewing court must determine "whether the response meets the substance of the request and whether any qualifications are demanded by, and made in, good faith." Wiwa, 2009 WL 1457142, at *5. Importantly, a "motion to determine the sufficiency of a response is not to be used as an attempt to litigate the accuracy of a response." Id. (emphasis in original) (internal quotation marks and citation omitted). A simple, and outright, admission or denial is thus generally a sufficient response to an RFA. Id. at *4 (quoting United Coal Cos., 839 F. 2d at 967). Nonetheless, a party may well, "in good faith, qualify its answer or deny only part of a matter." Id. In the event that such a qualification is provided, it should yield "clarity and lucidity to the genuineness of the issue and not ... obfuscate, frustrate, or compound the references." Id. (internal quotation marks and citation omitted). At bottom, though, "the bar for a qualified denial should not be set too high" and, as such, a "response should be deemed sufficient if it reasonably informs the requesting party what is being admitted or denied." Id. (citation omitted).

Here, in his letter motion dated January 15, 2018, Plaintiff argues that all but two of Defendant Griffin's RFA responses, and all of Defendants Tokarz's and Nagy's RFA responses,

16

are defective. ECF No. 28, at 1-2. Specifically, Plaintiff takes issue with sufficiency of Defendant Griffin's responses to RFAs 1-10, and 13; Defendant Nagy's responses to RFAs 1-4; and Defendant Tokarz's responses to RFAs 1-3. According to Plaintiff, these answers are inadequate because they raise vagueness objections in addition to either offering an admission, denial, or qualified response.

Plaintiff's contentions are without merit. A cursory review of Plaintiff's letter motion and Defendants' RFA responses indicates that, although Defendants have interposed vagueness objections to many of Plaintiff's RFAs, they have not refused to answer any of them. Of the 11 responses from Defendant Griffin which Plaintiff takes issue with, seven provide outright denials (1, 2, 3, 6, 7, 9, 10), two answer with qualified denials (4, 13), and two give qualified admissions (5, 8). Meantime, all seven of the disputed RFA responses from Defendants Nagy and Tokarz are outright denials. These responses plainly satisfy Rule 36(a)(4). See Fed. R. Civ. P. 36(a)(4) ("If a matter is not admitted, the answer must specifically deny it ... and when god faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."). Accordingly, Plaintiff's letter motion which seeks an "Order declaring certain [RFAs] to be deemed admitted by Defendants Griffin, Nagy and Tokarz for purposes of this action due to said defendants providing defective answers", ECF No. 28, at 1, is DENIED.

## CONCLUSION

Based on the foregoing, Plaintiff's motion to compel production of documents requested in his first set of document demands, ECF No. 25, is DENIED IN PART; Defendants are directed to submit to the Court for in camera review all documents which are responsive to Requests Nos. 6, 8, and 11 in Plaintiff's first set of document demands, and an explanation of the

specific risks that could be incurred by disclosing such information, by **March 19, 2018.** Additionally, Defendants are ordered to provide a privilege log, identifying the documents which have been withheld pursuant to the law enforcement privilege, to Plaintiff and the Court by the same date. Plaintiff's motion seeking to deem certain RFA responses admitted, ECF No. 28, is DENIED. The Court will issue a ruling on Plaintiff's motion to compel production of documents requested in his second set of document demands, ECF No. 24, once it concludes the in camera review of the personnel files.

A copy of this Decision & Order as well as the unpublished decisions cited therein have been mailed to Plaintiff by Chambers.

Dated: March 1, 2018
      White Plains, New York

SO ORDERED,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

18