UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEFFREY CULBREATH,

        Plaintiff,

-against-

THOMAS GRIFFIN, et. al.,

        Defendants.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S REQUEST FOR THE COURT TO RESCIND ITS ORDER SUSTAINING DEFENDANTS' DISCOVERY OBJECTIONS

17-CV-3406 (KMK) (LMS)

---

## BACKGROUND

### A. Factual Background

Plaintiff was an inmate Green Haven Correctional Facility ("Green Haven" or the "Facility") during all relevant to the allegations in the Compliant. ECF No.2, Complaint ("Compl."), at 3-3c.[1] He alleges that, on August 3, 2015, a fight broke out between two inmates within the Facility's West Hall (the "Cafeteria"). Id. at 3a. After corrections officers ("C.O.s") had broken up the fight and the brawling inmates had been handcuffed, Defendant Nagy "maliciously released canisters of chemical agents" into the Cafeteria. Id. Plaintiff claims that the exposure to the chemicals caused him to experience extreme levels of pain in his face, eyes, head, neck, and arms, and to cough uncontrollably Id. "Suddenly", Plaintiff claims, Defendant Nagy "released an additional array of chemical agent canisters upon [the Cafeteria]." Id. C.Os. then directed Plaintiff and the other inmates to exit the Cafeteria and to make their way towards the C and D Yard (the "Yard"). Id. at 3a-3b. According to Plaintiff, a "stampede" developed as he and the other inmates exited and

the Cafeteria. Id. at 3a. Plaintiff collapsed, and, while on the floor, he was overrun by inmates and officers, who allegedly stomped on his back, legs, hands, head, chest, and stomach. Id. at 3b.

Plaintiff alleges that, once he and the other inmates entered the Yard, he was directed to place his hands on a wall in the corridor of the D-Block Housing Unit. Id. at 3b. Defendant Tokarz then allegedly ordered the C.O.s to "takedown" any inmate who removed his hands from the wall. Id. Plaintiff avers that he kept his hands on the wall for approximately one hour as he experienced excruciating pain in his lungs, arms, shoulders, face, eyes, and nose. Id. Plaintiff was then directed to remove his clothing, and forced to walk barefoot in his underwear to a shower, where he was permitted to wash his face and arms. Id. He was then ordered to "line up in the dirt until he was escorted to his housing unit." Id. Plaintiff claims that he suffered various physical and psychological injuries as a result of these events. Id. at 4.[2]

## BASIS FOR MOTION

### B. DECISION & ORDER DATED MARCH 1, 2018

The basis for Plaintiff request for the Court to rescind its Decision & Order in total, or in part, is simply that in rendering its decision, the Court 'overlooked' its discretion to allow Plaintiff an opportunity to demonstrate 'relevance' to the discovery requests the defendants had objected. Plaintiff asserts that had the Court swayed its discretion in such a manner, he would have demonstrated 'relevance' as the term is outlined in

Pg. 2

Opprnheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

Further, when the defendants first asserted their objections to the plaintiff's pertinent discovery requests, they did so in a "conclusory and general" manner which plaintiff asserts based on his reading of Melendez v. Greiner, 2002 WL 22434101 (SDNY 2003) was insufficient, however, in the exercise of the Court's discretion it did not bind the defendants' to their 'general and conclusory' assertions, but rat her,it directed them to substantiate their objections. In doing so, the Court overlooked its discretion to allow the plaintiff to substantiate 'relevance' to the pertinent items of requested discovery where such relevance was not easily apparent, and thereafter made its ruling. For this reason, it is consistent with all balanced fairness to allow plaintiff to express relevance to the pertinent discovery request items prior to just outright sustaining the defendants amended objections denying plaintiff's pertinent discovery requests. Therefore, Plaintiff request that this Court rescind its Decision & Order Dated March 1, 2018, in pertinent part, sustaining defendants' objections should be respectfully honored.

## DISCOVERY REQUEST RELEVANCE

With regard to Plaintiff first set of document demand (ECF No.25, Exh. A, at 1), the relevance thereto was related to whether the chemicals agents used being outdated and thereby toxic and harzardous from sitting for a very long outside the manufacturers recommendations. If this was the case, such data

would arguably support a basis for Plaintiff to ask the jury to heighten punitive damage award for knowingly releasing outdated and toxic level chemical agents unjustifiably on the Plaintiff. This representation applies to Request No. 2 of Plaintiff first set of document demands.

With regard to Plaintiff's first set of document demands Requests Nos. 3-5 (ECF No.25, Exh. A, at 1), the relevance thereto allows the Plaintiff to search the toxic nature of the chemical agents used by consulting a chemical expert or having internet research conducted from a review of chemical expert findings as it relates to the combination of the chemicals properties of the chemical agents used. The manufacturers identity would allow's Plaintiff to consult the manufacturer to inquire as whether the was ever a recall on said chemical agents due to toxic related reasons. If this was the case, this would allow the plaintiff to argue to the jury that the subjective mind state of the defendants was wanton, malicious and sadistic and thereby yet another basis to permit heighten levels of compensatory and punitive damage awards.

## PREJUDICE TO PLAINTIFF

Plaintiff also contends that the requested documents are the only source from which Plaintiff can retrieve that data that can serve to his benefit as related to the cited relevance, and that if discovery thereto is denied, it would cause irreparable damage to plaintiff's ammunition range before the jury in connection with defendants subjective mind set and heightened punitive award legitimacy.

## CONCLUSION

WHEREFORE, based upon the foregoing, the Plaintiff respectfully request that the Court grant his request in all respects.

Dated: April 2, 2018
Auburn, New York

Respectfully submitted,

Jeffrey Culbreath
DIN #95-B-1028
Auburn Corr. Fac.
135 State Street
Auburn, N.Y. 13024
Plaintiff, Pro-se

To:
Julinda Dawkins, Esq., AAG
Office of the Attorney General
120 Broadway, 24th Flr.
New York, N.Y. 10271
Attorney for Defendants

## FOOTNOTES

1. Plaintiff is currently incarcerated at Auburn Correctional Facility. ECF No.10.

2. Specificaaly, Plaintiff alleges that he sustained "painful irritation in both eyes; sharp pain and mucus secretion in both eyes; tearing eyes when exposed to light; headaches; impaired vision; future risk of blindness; nasal and throat irritation; neck pain; permanent bruis[ing] on [the] left elbow and shoulder; difficulty breathing for approx. a week; pain in [the] left elbow and shoulder for aprox. a week; permanent damage to lower back causing uncomfortable pain and limited mobility; stress; loss of appetite; anxiety; lack of sleep for nearly 3 days due to discomfort and anxiety." Compl., at 4.

                                        Mr. Jeffrey Culbreath
                                            DIN #95B1028
                                             Auburn C.F.
                                           135 State Street
                                         Auburn, N.Y. 13024
                                            April 2, 2018




Clerk of Court
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, N.Y. 10601

Re: Culbreath v. Griffin, 17-CV-03406 (KMK) (LMS)

Dear Clerk of the Court:

In regards to the above-referenced matter, enclosed please find
for filing the Memorandum of Law permitted by the Judge Smith's
latest Order relating to her Decision & Order March 1, 2018.

In advance, I thank you for your services.

Respectfully submitted,

Jeffrey Culbreath
Plaintiff, Pro-se

