**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**CULBREATH,**

**Plaintiff,**

*– against –*

**GRIFFIN, ET AL.,**

**Defendants.**

**17 CV 3406 (KMK) (LMS)**

**REPORT**
**&**
**RECOMMENDATION**

---

**THE HONORABLE LISA MARGARET SMITH, U.S.M.J.[1]**

Under the Court's Standing Order regarding the Creation and Administration of the *Pro Bono Fund* (16–MC–0078) (the "Standing Order"), *pro bono* counsel may apply to the Court for preauthorization and reimbursement of certain expenses during litigation. On October 16, 2018, counsel for Plaintiff[2] submitted a request for preauthorization of funds from the *Pro Bono Fund* for certain discovery costs totaling $14,000. ECF No. 68. Pursuant to Standing Order ¶ 2, only the Chief Judge may grant approval of requests for preauthorization of funds that exceed $5,000. Accordingly, after reviewing the material submitted by Plaintiff's counsel, as well as the requirements and procedures for obtaining preauthorization of funds, the undersigned reports and respectfully recommends that Plaintiff's request for preauthorization of funds in the amount of $14,000 be GRANTED.

---

[1] On November 1, 2017, the Honorable Kenneth M. Karas referred this matter to the undersigned for general pre-trial supervision. ECF No. 19.

[2] Plaintiff represented himself *pro se* until August 15, 2018. On that date, Ryan Lozar filed a notice of limited appearance to represent Plaintiff *pro bono* for the limited purpose of discovery and settlement discussions. ECF No. 56.

Plaintiff's counsel estimates that $2,000 to $3,000 will be required to finance the cost of conducting three depositions (as of October 16, 2018, two depositions have already been scheduled). Additionally, Plaintiff's counsel estimates that expert fees will cost $11,000. Specifically, Dr. Jonathan Borak's[3] preparation of an expert report, as well as his eventual trial testimony.[4] In support of his request for preauthorization of funds, Plaintiff's counsel avers that Dr. Borak's expert testimony "is critical to the central issues in [Plaintiff's] case," and will present the "clearest evidence to a jury regarding the unreasonableness of Defendants' contested actions." ECF No. 68, p. 2. Plaintiff's counsel also notes that Dr. Borak's expert testimony is required as it will "address potential jury confusion." Id.

After reviewing the documentation submitted by Plaintiff's counsel, as well as the requirements and procedures for obtaining preauthorization of funds pursuant to the Standing Order, the undersigned reports and respectfully recommends that Plaintiff's application for preauthorization of funds from the *Pro Bono Fund* be GRANTED as Plaintiff's counsel has submitted sufficient documentation to permit the Court to determine that the anticipated expenses are appropriate and reasonable.

Dated: October 23, 2018
      White Plains, New York

                                    SO ORDERED,

                                      Lisa Margaret Smith
                                      United States Magistrate Judge
                                      Southern District of New York

---

[3] While not filed on ECF, a copy of Dr. Borak's curriculum vitae detailing his qualifications is attached to this report and recommendation.

[4] In accordance with Standing Order ¶ 2, Plaintiff's counsel provided a detailed description of said expenses in his October 16, 2018, letter, which is attached to this report and recommendation.

The Law Office of Ryan Lozar, P.C.
305 Broadway, 14th Floor, New York, NY 10007
Tel: (310) 867-1562; Alternate Tel: (646) 666-8262; Fax 1-877-666-4456
ryanlozar@gmail.com



OCTOBER 16, 2018

Re:   <u>Culbreath v. Griffin, et al.</u>, No. 17 Civ. 3406 (KMK) (LMS)

Dear Judge Smith:

    I represent Plaintiff Jeffrey Culbreath in the above-captioned Section 1983 case before the Court. Although Mr. Culbreath initially represented himself <u>pro se</u>, I recently made an appearance to represent him after <u>pro bono</u> appointment. <u>See, e.g., Docket No. 2; Docket No. 56.</u>

    As discussed at Sept. 21, 2018, conference with the Court, I write to request preauthorization for certain discovery costs including expert fees from the <u>pro bono</u> fund pursuant to the Amended Standing Order <u>In the Matter of the Creation and Administration of the Pro Bono Fund</u>, 16-MC-78 (hereinafter "Standing Order"). <u>See Exh. 1</u> (copy of Standing Order). The Parties have another conference with the Court on Friday, Oct. 19, at 11:30 a.m.

    The funds will first finance necessary depositions. The Parties have scheduled two Defendants' depositions for October 26, 2018, in New York City, and we will shortly schedule the third. From my experience paying court-reporter invoices, I estimate that costs relating to these three proceedings may total somewhere in the range of $2,000 to no more than $3,000. (Alone this expense would not require me to make the instant application, as it falls well within the standard reimbursement range for a <u>pro bono</u> case.)

    Next, the requested monies will finance the expert services of Dr. Jonathan Borak, a board-certified physician in medicine and toxicology. In the event that the Parties can settle this case, I note that Dr. Borak's fee will be reimbursable to the Fund in accordance with the Standing Order at ¶ 6(c). (It is this expense category that requires the preauthorization application.)

    To describe the need for Dr. Borak's services in greater detail, a brief summary of relevant case facts is warranted. On August 3, 2015, Mr. Culbreath was in DOCCS custody at Green Haven Correctional Facility eating in the cafeteria when two inmates became involved in an altercation. Mr. Culbreath was not involved in the altercation in any way, and Mr. Culbreath was a significant distance away from it (by his estimate, 70 feet). When Defendant Officer Michael Nagy observed the altercation from a security booth, he indiscriminately dropped or launched cafeteria-wide chemical "bombs" (canisters loaded with the chemicals at issue) upon all inmates, including Mr. Culbreath.[1] As inmates began to manifest injury and pain from the chemical deployment (coughing, burning, difficulty breathing, etc.), Defendant Nagy unjustifiably and unreasonably deployed still more chemical canisters upon them <u>en masse</u>.

    The repeated chemical deployments uniquely affected Mr. Culbreath when the contents of a canister landed directly upon him. This in turn caused him particularly painful injury to his skin, eyes,

---

[1] I will omit specifics regarding these chemicals to defer to Defendants' security concerns as they have raised them at other points of this litigation. However, attorney's-eyes-only discovery has afforded me a preliminary understanding about their nature, and I will come prepared to discuss this at greater length with the Court at the Parties' October 19, 2018, conference.

respiratory system and more. In the cafeteria evacuation which followed the chemical force, which evacuation was proximately caused by Nagy's unlawful actions, Mr. Culbreath was trampled and suffered additional physical injury.

Outside the cafeteria, Mr. Culbreath repeatedly pleaded with Defendant Lt. Tokarz for decontamination and medical attention for the chemicals still upon him. When Defendant Tokarz eventually granted Mr. Culbreath some measure of unreasonably-delayed decontamination, it was meager and unreasonably insufficient—Mr. Culbreath was given about one minute at a single showerhead with other inmates. In that short time and under those circumstances, Mr. Culbreath tried to reach and make use of as much water as he could. Then, Mr. Culbreath was taken and locked in his cell still with chemicals on him and suffering their injurious effects.

I now return to Mr. Culbreath's need for Dr. Borak and the instant application. As the Court will recall, Plaintiff previously made pro se motions for discovery relating to the chemicals used upon him during the incident. The Court denied those motions with leave to renew upon Plaintiff's retention of a toxicology expert whose testimony could meaningfully help the Court, the Parties and a jury understand that information, i.e., through testimony about the nature of the chemicals used in the force incident (discovery suggests that chemicals of varying potencies were deployed), their commonly-understood effects on various human bodily system (which is why law enforcement uses them as a force-control tool), whether and to what extent timely and/or adequate decontamination mitigates the human harms inflicted upon those exposed to these particular chemicals; and more (hereinafter collectively "chemical discovery").[2] Dr. Borak will be Plaintiff's expert.

Although I cannot make a precise estimate of Dr. Borak's fees for effective performance of his work because I do not yet have the full chemical discovery he needs (the volume of which will dictate how many hours he needs to go through it), I represent to the Court that I reasonably believe I can limit the expense to no more than $11,000. This figure includes Dr. Borak's preparation of his report and his eventual trial testimony. After adding this $11,000 for Dr. Borak to the higher-number in my deposition cost-range estimate, I make this fund-preauthorization application for the $14,000 total sum.[3]

As required by the Standing Order, I believe that the necessary "extraordinary circumstances" exist to obtain preauthorization for funds in excess of $10,000 for the following reasons. See Exh. 1 ¶ 2.

Dr. Borak's expert testimony is critical to the central issues in Mr. Culbreath's case because, without it, Mr. Culbreath will be hamstrung in presenting his clearest evidence to a jury regarding the unreasonableness of Defendants' contested actions. For example, and as the Court's earlier chemical-discovery-motion denials suggest, a lay witness would not be able to reliably/helpfully explain the

---

[2] I note that I have served Defendants with a FRCP 26 expert notice for Dr. Borak, and will renew Mr. Culbreath's discovery requests relating to the chemicals so that Dr. Borak may have the necessary data for his work. As with much else referenced in this application, I will be prepared to answer the Court's questions regarding Dr. Borak's qualifications and the referenced discovery at the Parties' October 19, 2018, conference.

[3] I would like to stress what is obvious—my final total costs will not exceed $10,000 if the lower end of my cost-range estimates are realized. I will make every reasonable effort to achieve that result, but I must acknowledge in this application that, particularly with respect to Dr. Borak, I cannot control final costs with certainty.

I also note that in the event Dr. Borak's fee exceeds this amount (which is the maximum that I account for in this preauthorization application, I further represent to the Court that I am willing to pay the difference from my own pocket. This is how strongly I feel about his testimony's importance to Mr. Culbreath's case.

chemical discovery. Relatedly, and importantly, a lay jury cannot understand it without expert exposition. Without Dr. Borak's contribution, what would be left is Mr. Culbreath's testimony about injury and pain caused by the challenged chemical force and surrounding events, and Defendants' arguments that Mr. Culbreath has no objective proof showing that such chemicals' effects can or are meant to inflict injury and pain to such a degree or for such duration.

The need for Dr. Borak's testimony is further supported by law and discovery demonstrating institutional acknowledgement that the use of chemical force requires cautious regulation. See, e.g., 9 NYCRR §§ 7634.1-7634.7 (state law regulating chemical uses of force). Although I will refrain from discussing confidential discovery on this point, I will be ready to answer the Court's related questions while arguing broadly here that one can reasonably infer that careful regulation of chemical force shows institutional and social concern for the human harms threatened by exposure, which in turn bears on the reasonableness of challenged actions in this case.

Also, Plaintiff must address potential jury confusion regarding the nature, potency and effects of the law-enforcement-grade chemical agents at issue here as compared with those same facts as they pertain to what I will call "civilian personal-defense devices" such as those sold on keychains. From my own personal (and admittedly non-expert) reading, I believe that chemical agents such as the ones at issue in this case are different in constitution, strength and effect from weaker and/or smaller civilian personal-defense devices with which a jury is much more likely to be familiar.[4]

Finally, I note that there is at least one other § 1983 case in this District arising from the same chemical UOF incident. It is my understanding that the pro se plaintiff in that case obtained counsel after discovery closed, with no pro bono funds expended for discovery. See Burns v. Nagy, No. 16 Civ. 782 (VB). Although I do not know all Parties' or the Court's view on eventual consolidation of these related cases, I note only that Plaintiff's application here could at least conceivably redound to the benefit of both in forma pauperis litigants at some point, and not just Mr. Culbreath alone.

In light of the foregoing, I respectfully ask that both Your Honor and Chief Judge McMahon preauthorize up to $14,000 in reimburseable funds to properly litigate this case. This will permit me to retain Dr. Borak, and I again state that I will make every reasonable effort to not require the full requested amount which is based on range estimates.

Sincerely,

Ryan Lozar

---

[4] I do not expect the Court to credit my lay understanding of this from my own reading for all the reasons I argue that Dr. Borak's testimony in this case is sufficiently important to show "exceptional circumstances" under the Standing Order.

DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 6, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of

THE CREATION AND ADMINISTRATION
OF THE PRO BONO FUND

AMENDED STANDING ORDER

16-MC-78

M 10-468

By Order dated October 1, 1997, the Court created a one-year pilot fund to reimburse pro bono attorneys for the costs of litigation in pro se cases. By Order dated March 29, 1999, the Pro Bono Fund was established as a permanent program of this Court. By Orders dated May 25, 2011, and February 25, 2016, the Pro Bono Fund procedures were revised. Those Orders are stricken and the Pro Bono Fund is administered as follows.

### STATEMENT OF PURPOSE

The purpose of the Pro Bono Fund is to encourage attorneys to represent indigent pro se parties at the Court's request, or at the request of a legal-advice clinic authorized by the Board of Judges ("authorized legal-advice clinic"), in civil proceedings in this Court. It is intended especially to encourage and assist attorneys for whom pro bono service is a financial hardship. Reimbursement from the Fund is discretionary and shall not be deemed to vest any rights in litigants or their attorneys.

When an attorney appears on behalf of an indigent pro se litigant at the request of a judge of this Court or at the request of an authorized legal-advice clinic, subject to the restrictions of this Order, that attorney may move for reimbursement of expenses incurred in the course of the proceeding. For purposes of this Order, the terms "pro bono counsel" or "pro bono attorney" refer only to those attorneys who file a notice of appearance or notice of limited appearance in a civil proceeding on behalf of an indigent pro se litigant at the request of a judge of this Court or at the request of an authorized legal-advice clinic. The term "judge" includes United States

Case 1:16-mc-00076-PM Document 2 Filed 01/06/17 Page 2 of 8

Magistrate Judges, and the term "assigned judge" refers to the United States District Judge to whom the case is assigned or the United States Magistrate Judge before whom the case is proceeding on consent of the parties. A District Judge may refer any request under this order to the Magistrate Judge.

The Court authorizes an appropriation from the Miscellaneous Fund for the Benefit of the Bench and Bar to fund reimbursement requests from the Pro Bono Fund.

### LIMITATIONS ON ELIGIBILITY

**1.      Not applicable if C.J.A. funds are available**

In any proceeding where expenses are covered by the Criminal Justice Act (18 U.S.C. § 3006A), expenses will be paid from those funds in accordance with C.J.A. guidelines, and not from the Pro Bono Fund.

**2.      Limit on total expenses covered by fund**

The assigned judge may preauthorize or approve reimbursement of expenses up to a total of $5,000.00; if the total of the preauthorizations or reimbursements requested and those already allowed exceeds $5,000.00, only the Chief Judge may grant approval.

Only under extraordinary circumstances will more than $10,000 in expenses be reimbursed to any party.

When requesting preauthorization or reimbursement for any expenses under this paragraph, a detailed description of the expenses should be attached to the request submitted to the judge.

Where two or more parties in the same proceeding are represented by pro bono counsel, the limits established by this section will apply to the costs incurred on behalf of each party.

2

3.     **Limited to civil actions before the District Court**

Only those expenses associated with a pro bono attorney's preparation of a civil action in the U.S. District Court for the Southern District of New York will be approved for reimbursement. No costs or expenses associated with the preparation or presentation of an appeal to the U.S. Court of Appeals or the U.S. Supreme Court shall be reimbursed from the District Court's Pro Bono Fund.

4.     **Overhead costs not covered**

General office expenses, including personnel costs, rent, telephone services, secretarial help, office photocopying equipment, and any general expense that would normally be reflected in the fee charged to a client are not reimbursable.

5.     **Not available to pay costs awarded against party**

Under no circumstances will any payments be authorized from the Fund to pay for costs or fees taxed as part of a judgment obtained by an adverse party against a party for whom pro bono counsel appeared at the request of the Court or an authorized legal-advice clinic.

6.     **Reimbursement where party prevails or accepts a settlement**

(a)     Where the party for whom pro bono counsel appeared prevails and is therefore entitled to an award of attorneys' fees and costs, the party shall seek costs from the adverse party and is only eligible for reimbursement for such costs from the Fund if the party cannot, after reasonable efforts, obtain payment for those costs. Reimbursement will be limited in accordance with paragraph (b) below according to the amount actually collected after reasonable efforts.

(b)     Where the party for whom pro bono counsel appeared enters into a settlement, reimbursement may be sought as provided in this Order, except that (1) if the settlement is for an amount between $5,000 and $30,000, the total amount to be paid from the Fund shall be the

3

amount of eligible expenses minus 50% of the settlement amount over $5,000.00,[1] and (2) if the settlement is for more than $30,000, expenses are not reimbursable by the Fund.

(c)     To the extent that any expenses reimbursed by the Fund are subsequently paid through settlement or otherwise, or are not eligible for reimbursement because of the limitations contained in this section, the amount reimbursed by the Fund must be returned.

## EXPENSES AND COSTS COVERED

**7.     C.J.A. limits to apply in absence of specific limits**

Except as otherwise specified by this Order, reimbursements under this Order shall be governed by the guidelines for administering the Criminal Justice Act (18 U.S.C. § 3006A). See also *Guide to Judiciary Policies and Procedures,* Volume VII, Section A, Chapters 2 and 3.

**8.     Deposition and transcript costs**

The costs of depositions or transcripts – including transcripts prepared by a private court reporter at a deposition – may not exceed the regular rate as established by the Judicial Conference of the United States and in effect at the time any proceeding is transcribed, unless some other rate was previously approved by order of the court. Except as otherwise ordered by the court, only the cost of the original of any transcript or deposition together with the cost of one copy each where needed by counsel shall be allowed. Daily trial transcripts shall not be approved absent good cause shown.

**9.     Copying, telephone, and other reasonable administrative costs**

Actual, out-of-pocket expenses incurred for items such as photocopying services, photographs, and telephone calls necessary for the preparation of a case may be reimbursed.

---

[1] For example, a party who receives a settlement of $13,000 and had $7,000 in expenses could seek reimbursement of $3,000.

**10.    Service of papers; witness fees**

Those fees for service of papers and the appearances of witnesses that are not otherwise avoided, waived, or recoverable may be reimbursed.

**11.    Reasonable travel expenses of the attorney**

Travel by privately owned automobile may be claimed at the rate currently prescribed for federal judiciary employees who use a private automobile for conduct of official business, plus parking fees, tolls, and similar expenses. Transportation other than by privately owned automobile may be claimed on an actual expense basis. Per diem in lieu of subsistence is not allowable; only actual expenses may be reimbursed. Actual expenses reasonably incurred shall be guided by the prevailing limitations placed upon travel and subsistence expenses of federal judiciary employees in accordance with existing government travel regulations.

**12.    Interpreter services**

Costs of interpreter services not otherwise avoided, waived, or recoverable may be reimbursed.

**13.    Other expenses and expenses exceeding $5,000**

Other than those expenses described in paragraphs 8 through 12 of this section, expenses, such as those for experts, must be authorized in advance by the assigned judge. No single expense under this paragraph exceeding $500 will be reimbursed unless authorization was granted before the expense was incurred. Any single expense exceeding $5,000 must be authorized in advance by the Chief Judge. As noted in paragraph 2 above, the Chief Judge must also approve any expense if the total of the preauthorizations or reimbursements requested and those already allowed exceeds $5,000.00,

5

When requesting preauthorization or reimbursement for any expenses under this

paragraph, a detailed description of the expenses should be attached to the request submitted to

the judge.

## PROCEDURES FOR OBTAINING REIMBURSEMENTS

**14.    Request for authority to incur expense**

For those expenses where preauthorization is required, the request for authority to incur

the expense must be made by request submitted to the assigned judge. The request should set

forth briefly the reason for the request and the estimated amount of the expense. Any request to

incur an expense that would cause the total of expenses for which reimbursement is sought to

exceed $10,000 must demonstrate extraordinary circumstances to justify the amount of expenses.

**15.    Request for reimbursement of expenses**

Any request for reimbursement of expenses must be on a voucher form approved by the

Court, available on the Court's website and from the Clerk's Office.

**16.    Requests for reimbursement by attorney no longer representing party**

Unless the Court orders otherwise, where a pro bono attorney is permitted to withdraw

from representing the party in a proceeding or has only appeared pro bono for a limited purpose,

and that attorney has incurred expenses that are reimbursable under this Order, the attorney must

file a request for reimbursement within 30 days of the date of the entry of an order allowing the

withdrawal, a notice of completion, or other docket entry indicating the termination of the pro

bono representation.

**17.    Procedures for submitting requests**

Any request under paragraph 14, 15, or 16 above must be accompanied by sufficient

documentation to permit the Court to determine that the request is appropriate and reasonable. If

the request is for reimbursement, it must show that the expenses have actually been incurred. The

request must be submitted to the assigned judge in accordance with his or her Individual Rules and Practices and may be submitted *ex parte*. Requests for reimbursement must be submitted within 30 days of the entry of judgment. The assigned judge may, for good cause shown, extend the time for filing a request for reimbursement.

**18.    Actions by assigned judge and Chief Judge**

The assigned judge or the Chief Judge may refuse to preauthorize or may disallow reimbursement of any expense based upon the absence of documentation demonstrating that such expense is appropriate or reasonable, or, where reimbursement is requested, was actually incurred.

**19.    Processing of vouchers**

Upon receipt of the completed voucher from the pro bono attorney, the assigned judge will review the voucher and, if appropriate, approve up to $5,000.00 in reimbursement. If a completed voucher or request for preauthorization seeks preauthorization or reimbursement for more than $5,000, and the assigned judge believes that such preauthorization or reimbursement is appropriate, the assigned judge will present the voucher or request for preauthorization to the Chief Judge with a recommendation that it be approved.  The assigned judge may deny a request for reimbursement above $5,000 without approval by the Chief Judge.

Any request for reimbursement of expenses where those expenses required preauthorization must include the signed preauthorization. If the request is for reimbursement, and the voucher is approved by the assigned judge or Chief Judge, the Clerk of Court will promptly issue the payment in the amount approved by the Court. If the assigned judge or Chief Judge disallows any or all of the amounts requested, the Clerk of Court will transmit to the pro bono attorney a copy of the voucher showing the action of the judge.

**20.** **Processing by Clerk**

On receipt of the voucher form indicating amounts approved for reimbursement, the

Clerk of Court will check to determine whether or not any payments have previously been made

out of the Fund to cover expenses in the same proceeding. If no such payments have been made,

the Clerk of Court will promptly issue the required check or checks in the amount indicated on

the voucher form or the limit set by these regulations, whichever is lower. Where payments have

previously been made from the Fund for expenses in the proceedings, the Clerk will check to see

if the amounts authorized by the current voucher together with amounts previously paid would

require additional approval by the Chief Judge because the total exceeds the limits set by this

Order for amounts approvable by the assigned judge. Where such approval is required, the clerk

shall promptly transmit the voucher to the Chief Judge. On receipt of the voucher from the Chief

Judge, the Clerk shall promptly issue the required check or checks in the amount indicated on the

voucher form or limit set by these regulations, whichever is lower. If the Chief Judge disallowed

any or all of the amounts requested, the Clerk will promptly transmit to the submitting attorney a

copy of the voucher showing the action of the Chief Judge.

SO ORDERED.

Dated:    December 21, 2016
          New York, New York

                                        _____
                                              COLLEEN McMAHON
                                        Chief United States District Judge

8